IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL R. ADAMS,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CITY OF MEMPHIS/MUNICIPALITY** )<br>**AND POLICE OFFICERS OF THE** )<br>**MUNICIPALITY; (FNU) HARDAWAY;** )<br>**(FNU) WEEAMS; (FNU) FERNANDEZ;** )<br>**MICHAEL RALLINGS, et al.,** )<br>)<br>    **Defendants.** ) | **No. 2:20-cv-02644-JTF-atc** |

### REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

On August 21, 2020, Plaintiff Michael R. Adams filed a *pro se* complaint against the Defendants, the City of Memphis/Municipality; Michael Rallings, the chief of the Memphis Police Department; and Memphis Police Department officers Hardaway, Weeams, and Fernandez, whose first names are omitted from the complaint. (ECF No. 1.)  Adams alleged violations of his civil rights under 42 U.S.C. §§ 1983 and 1988;[1] state law statutory violations of both the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated §§ 29-20-101, *et seq.*, and Tennessee Code Annotated § 36-3-611, which governs arrests pursuant to violation of an order of protection; as well as common law claims for intentional/negligent infliction of emotional distress, nonfeasance, and breach of duty of care. (ECF No. 1.)  On September 2,

---

[1] Under 42 U.S.C. § 1988, a prevailing party can recover its attorneys' fees in a civil rights action. Plaintiff's basis for his claim under that provision is not clearly stated in his complaint, so the Court assumes he is seeking to reserve his right to seek attorneys' fees if he is successful under § 1983.  *See Cutler v. Scott*, No. 09-1238, 2010 WL 2598248, at *1 n.3 (W.D. Tenn. June 24, 2010).

2020, the Court granted Adams's motion for leave to proceed *in forma pauperis*. (ECF No. 6.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

## **PROPOSED FINDINGS OF FACT**

The following findings of fact are based on the allegations in Adams's complaint. Adams alleges that, on June 18, 2018, he was granted an order of protection (the "Protective Order") against his neighbor, who is alternatively identified as "Julius" or "Lafayette" Marshall. (ECF No. 1, at 3–4.) Adams alleges his many problems with Marshall date to March of 2016. Adams asserts that, among other things, Marshall and his associates trashed Adams's property, littered it with beer cans, and used drugs there. (*Id.* at 5–6.) Adams also alleges that Marshall would follow him to other properties Adams owned in the area and would make threatening gestures toward him, including displaying a pistol in his beltline during their interactions. (*Id.* at 6–7.) Adams asserts that he has "four police reports against Marshall," although the complaint does not specify the offenses complained of in each. (*Id.* at 7.) Whether and which of the litany of alleged offenses occurred before or after the issuance of the Protective Order is not clear in the complaint.

Adams alleges that Marshall violated the Protective Order in November of 2018, although he does not explain how, which resulted in the issuance of an arrest warrant. (*Id.* at 3.) Adams states that, despite Marshall's violation of the Protective Order, officers of the Memphis Police Department failed to arrest Marshall when they confronted him on August 20, 2019, apparently because Marshall provided them with a fictitious name. (*Id.* at 4.) This failure to

arrest Marshall pursuant to the Protective Order, and the Memphis Police Department's training and policies that allegedly permitted that failure to happen, form the basis for Adams's claims.

The complaint alleges that the City of Memphis failed to properly train and supervise its officers and that it established policies, procedures, customs, and practices under which its officers failed to make arrests when they had a duty to act pursuant to an order of protection. (*Id.* at 9.) As a result of the police department's and its officers' negligent failure to enforce the Protective Order, Adams asserts that he "is in fear for his life and that comes as a direct result of the Memphis police officers on scene refusing to consider the duty of care to Adams where there was no arrest." (*Id.* at 7.) Adams alleges that he has lost capacity to earn increased wages, lost anticipated future earnings, and suffered a damaged reputation based on the Memphis Police Department's failure to arrest Marshall. (*Id.* at 9–11.) Adams asserts that, because of this inaction, he "is being denied access to an American Home Resource/employment system, that creates upward mobility and allows him to invest in himself and his family." (*Id.* at 11.)

## **PROPOSED CONCLUSIONS OF LAW**

**I.      28 U.S.C. § 1915(e)(2) Screening**

Under Local Rule 4.1(b)(2), the clerk of the court will only issue summonses in cases with non-prisoner *pro se* plaintiffs who are proceeding *in forma pauperis* at the court's direction after the court conducts a screening under 28 U.S.C. § 1915(e)(2)(B). Under that provision, the court shall dismiss the case at any time if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." This report and recommendation constitutes the Court's screening.

**II.     Standard of Review for Failure to State a Claim**

To determine whether Adams's complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v.*

*Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

### III.     Adams's 42 U.S.C. § 1983 Claim

Even when construing Adams's complaint liberally, as the Court must do given his *pro se* status, the complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983. As a starting point, Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). Section 1983 created a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755 (2005) (quoting 42 U.S.C. § 1983).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the 'Constitution and laws' of the United States (2) committed by a person acting under color of state law." *Gooch v. Jones*, No. 1:18-cv-01257-STA-jay, 2019 WL 3069870, at *2 (W.D. Tenn. June 21, 2019), *report and recommendation adopted*, No. 1:18-cv-

01257-STA-jay, 2019 WL 3069456 (W.D. Tenn. July 12, 2019) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Ross v. City of Memphis*, 394 F. Supp. 2d 1024, 1035 (W.D. Tenn. 2005). Adams does not state what specific federal rights he is alleging Defendants infringed upon. However, a liberal construction of his Section 1983 claim suggests he is asserting that the City of Memphis, through its police department and its officers, violated his Due Process rights under the Fourteenth Amendment.

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Castle Rock*, 545 U.S. at 756 (quoting *Bd. of Regents*, 408 U.S. at 577). "Such entitlements are . . . 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 709 (1976)). Courts then look to federal constitutional law to determine "whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Id.* (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)).

As described in more detail below, Adams's complaint fails to satisfy the first required element of a Section 1983 claim, in that he has failed to allege the City of Memphis, its police department, or its officers deprived him of any rights secured by the Constitution of the United

6

States.[2]  Adams's claims center on the officers' failure to enforce the Protective Order or to arrest Marshall.  But under Supreme Court and Sixth Circuit law, Adams has neither a personal entitlement to, nor a property interest in, such police action.  *See Castle Rock*, 545 U.S. 748; *Hudson v. Hudson*, 475 F.3d 741 (6th Cir. 2007).

Both *Castle Rock* and *Hudson* involved horrific circumstances where individuals who were granted protective orders were murdered by the people they were supposed to have been protected from.[3]  In *Castle Rock*, a father violated a restraining order when he picked up his three daughters while they were playing in front of their mother's home.  The mother contacted the police multiple times in the hours that followed and eventually submitted an incident report the next morning.  *Id.* at 753–54.  The police ignored her requests for help in enforcing the restraining order.  A couple of hours later, the father drove to the police station and opened fire

---

[2] Adams's complaint does not specify whether he is suing the Defendants in their official or individual capacities.  Nevertheless, the absence of any underlying deprivation of Adams's rights secured by the Constitution and laws of the United States renders the distinction immaterial.  First, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  *Parker v. Henderson Cnty., Tenn.*, 450 F. Supp. 2d 842, 849 (W.D. Tenn. 2006) (quoting *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).  Therefore, any claims against the officers in their official capacities fail to state a claim because Adams has failed to state a claim against the City or its police department.  As to the individual capacity claims, the court in *Hudson* explained the defense of qualified immunity was available to the officers in circumstances similar to those before the Court.  475 F.3d at 744.  The court then concluded that, because the officers' conduct did not violate a federal right held by the plaintiff, the officers were entitled to qualified immunity as to the constitutional claims against them.  *Id.* at 746.  The same holds true here.

[3] Though *Castle Rock* involved a restraining order, courts, including the Sixth Circuit Court of Appeals in *Hudson*, also have applied its holding to protective orders.  *See, e.g.*, *Hudson*, 475 F.3d at 743; *see also Burella v. City of Phila.*, 501 F.3d 134, 146 (3d Cir. 2007) (finding plaintiff did "not have a cognizable claim that the officers' failure to enforce the orders of protection violated her due process rights"); *Bond v. Atkinson*, 728 F.3d 690, 691 (7th Cir. 2013) (finding due process claims based on, *inter alia*, a failure to enforce an order of protection, were "doomed by decisions such as *Castle Rock* . . ."); *Olson v. Cache Cnty.*, No. 1:09-CV-00049 TC, 2010 WL 3257978, at *3 (D. Utah Aug. 17, 2010) (finding failure to enforce a protective order did not give rise to a substantive or procedural due process claim).

with a semiautomatic handgun he had purchased hours before. *Id.* at 754. Police returned fire, killing him. Officers then found the bodies of the three daughters, whom the father had murdered, in the cab of his pickup. *Id.*

In considering whether the mother had a right to enforcement of the restraining order, the Supreme Court first found that Colorado law did not make police enforcement of restraining orders mandatory. *Id.* at 760–61 ("It is hard to imagine that a Colorado police officer would not have some discretion to determine that—despite probable cause to believe a restraining order has been violated—the circumstances of the violation or the competing duties of that officer or his agency counsel decisively against enforcement in a particular instance."). And even if enforcement of a restraining order were mandatory, the protected party was not necessarily entitled to the enforcement of such a mandate. *Id.* at 764–65 ("Making the actions of government employees obligatory can serve various legitimate ends other than the conferral of a benefit on a specific class of people."). The Court also found that, regardless, the mother did not have a property interest in any such entitlement, primarily because that benefit was the result of governmental action "directed against a third party and affect[ing] the citizen only indirectly or incidentally." *Id.* at 766–77 ("[T]he alleged property interest here arises incidentally, not out of some new species of government benefit or service, but out of a function that government actors have always performed—to wit, arresting people who they have probable cause to believe have committed a criminal offense."). The Court ultimately held that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Id.* at 768. "[T]he framers of the Fourteenth Amendment and the Civil Rights Act . . . did not create a system by

8

which police departments are generally held financially accountable for crimes that better policing might have prevented . . . ." *Id.*

In *Hudson*, the Sixth Circuit confronted similarly tragic facts and arrived at the same conclusion as the Supreme Court in *Castle Rock*. *Hudson* involved a woman who was the victim of numerous acts of domestic violence and who ultimately obtained multiple protective orders against her attacker. 475 F.3d at 743. Over the next several years she called the police multiple times concerning violations of the protective orders, including violent acts and threats against her, as well as damage to her property, but the Memphis Police Department took no action. *Id.* Eventually, the man broke into the woman's home and killed her and two of her friends before committing suicide. *Id.* Her son and mother sued several Memphis police officers, among others, asserting claims under the Fourteenth Amendment and Tennessee law. *Id.*

The District Court in *Hudson* found the officers were not entitled to qualified immunity because their actions were not discretionary under Tennessee Code Annotated § 36-3-611, the same statute cited by Adams (*see* ECF No. 1, at 2), which mandates arrests of those who violate protective orders. *Id.* The Sixth Circuit reversed that decision, asserting that, "[e]ven if Tennessee law might be read to create some type of property interest, that interest must still rise to the level of a constitutionally protected interest under the Due Process Clause of the Fourteenth Amendment." *Id.* at 746. The court concluded that it did not, holding that such an interest would arise only "incidentally" out of the governmental function of arresting perpetrators of criminal offenses, and determining "that the enforcement of Tennessee protective orders does not create a property interest protected by the Due Process Clause of the Fourteenth Amendment." *Id.* Under *Castle Rock*, the police department's failure to arrest the man who ultimately killed three people and

9

himself "offends neither the procedural nor substantive prongs of the Fourteenth Amendment's Due Process Clause." *Id.*[4]

This precedent mandates dismissal of Adams's complaint. The Court does not diminish the seriousness of Adams's allegations and the years of frustration he alleges he has endured at Marshall's hands. However, just as in *Castle Rock* and *Hudson*, any failure by the City of Memphis, its police department, its police chief, or any of its officers to enforce the Protective Order or arrest Marshall for violation of that Order does not rise to the level of depriving Adams of any rights secured by the United States Constitution. *See, e.g.*, *Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 429 (6th Cir. 2002) ("[A] violation of a state statute does not create a liberty interest or property right under the Due Process Clause of the Fourteenth Amendment.") (citing *Harrill v. Blount Cnty., Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995), for the proposition that "violation of a right created and recognized only under state law is not actionable under § 1983"). The absence of any violation of Adams's due process rights, either procedural or substantive, warrants dismissal of his claims under Section 1983.

## IV.    Adams's State Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims if it has dismissed all claims over which it has original jurisdiction. *Moses v. Gardner*, No. 14-02706-SHL-dkv, 2016 WL 11249025, at *16 (W.D. Tenn. Oct. 11, 2016), *report and recommendation adopted*, No. 14-CV-2706-SHL-dkv, 2017 WL 1364977 (W.D. Tenn. Apr. 12, 2017), *aff'd*, No. 17-5497, 2017 WL 9251805 (6th Cir. Nov. 9, 2017); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("If the federal claims are dismissed before

---

[4] To the extent that Adams asserts Defendants violated his substantive due process rights based on a state-created-danger theory, his complaint fails to state a claim. Defendants' alleged inaction is not an affirmative act, a requirement for relief under such a theory. *See Hudson*, 475 F.3d at 745.

trial, the state claims generally should be dismissed as well.") (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir. 2003)).

Because Adams's Section 1983 claim forms the basis of all his claims under federal law, it is recommended that the Court decline to exercise supplemental jurisdiction over his state law claims.

## **RECOMMENDATION**

For the foregoing reasons, this Court recommends that Adams's claims against the Defendants be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

Respectfully submitted this 23rd day of October, 2020.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.